UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGENOT BAZELAIS,<br><br>          Petitioner,<br><br>      v.<br><br>TANYA ANDREWS, WARDEN GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>          Respondents. | Case No.   1:26-cv-03888 (EJD)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. Nos. 1, 3 |

This habeas action concerns the detention of Petitioner Agenot Bazelais, a noncitizen who has lived in the United States since December 14, 2023. Based on the Government's new interpretation of 8 U.S.C. § 1225(b)(2) as mandating detention for all noncitizens present in the United States without admission, Petitioner was detained without any finding of changed circumstances by a neutral decisionmaker that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. *See* Dkt. 1, 3. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion for temporary restraining order as moot.[1]

## I.     BACKGROUND

Petitioner is a citizen of Haiti who entered the United States at or near the Nogales, Arizona DeConcini Port of Entry on December 14, 2023 after booking an appointment with U.S. Customs and Border Patrol ("CBP") through its CBP One application. Dkt 9-1 at 2. At the

---

[1] In setting a briefing schedule for the Petition and motion for a temporary restraining order, the Court indicated that it intended to rule directly on the Petition. *See* Dkt. INSERT. Respondents did not oppose a combined ruling in their joint response to the petition and motion for a temporary restraining order. *See* Dkt. INSERT.

Case No.: 1:26-cv-03888-EJD

1

appointment, Petitioner was found to be inadmissible "pursuant to section 212(a)(7)(A)(i)(I) of the INA[,]" was issued a notice to appear, and placed in removal proceedings under section 240 of the INA. *Id*. He was subsequently paroled into the United States on his own recognizance for a period of two years. *Id*.; Dkt. 9 at 2. Following his release, Petitioner submitted an application for asylum and temporary protected status, received work authorization, and began work. Dkt. 1 ¶ 23; Dkt. 11 at 9.

Petitioner was re-detained by U.S. Immigrations and Customs Enforcement ("ICE") on March 30, 2026 after an arrest for public intoxication. Dkt. 9 at 2. Petitioner challenges the basis of this initial arrest, explaining that he was stopped by a police officer after purchasing a sprite and bottle of rum while walking home from work. Dkt. 1 ¶ 23. After reviewing Petitioner's documentation, and upon seeing that Petitioner had a bottle of rum in his shopping bag, the police officer arrested Petitioner without conducting any sobriety tests. *Id*. The police turned Petitioner over to ICE shortly thereafter. *Id*. Respondents have not indicated whether Petitioner was charged following this arrest, nor did they submit a rap sheet to the Court indicating that Petitioner has been charged or convicted of any criminal offenses.

Petitioner received a bond hearing before an immigration judge ("IJ") on April 13, 2026. Dkt. 9 at 2. Though Respondents did not produce the IJ's order with their response, they represented that the IJ denied Petitioner bond on the basis that the "court lacked jurisdiction because [] Petitioner was an arriving alien." *Id*. Petitioner did not appeal this decision to the Board of Immigration Appeals ("BIA"), and filed this instant petition on May 20, 2026.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

Case No.: 1:26-cv-03888-EJD

Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner argues that his prolonged re-detention without an individualized finding of flight risk or danger to the community violates the due process clause of the Fifth Amendment. *See* Dkt. 1 ¶¶ 46–49. As a remedy, Petitioner requests a constitutionally adequate bond hearing at which the government must demonstrate that he is a flight risk or danger to the community to justify further detention. *See* Dkt. 1 at 17; Dkt. 11 at 9.

Respondents make three arguments in response: (1) that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) (Dkt. 9 at 2); (2) that Petitioner is not entitled to due process protections beyond what is provided by statute (*id*. at 2–3); and (3) that the petition should be dismissed because Petitioner failed to exhaust his administrative remedies before filing the instant petition (*id*. at 3).

### A.    Exhaustion of Administrative Remedies

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by, Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the

Case No.: 1:26-cv-03888-EJD

3

need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citing *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

The Court finds that exhaustion would be futile under these circumstances and waives the prudential exhaustion requirement. Like the IJ that found it did not have jurisdiction to release Petitioner on bond, the BIA is obligated to apply *Matter of Yajure Hurtado*, in which the BIA found that "aliens who are present in the United States without admission are applicants for admission as defined under … 8 U.S.C. § 1225(b)(2)(A), … must be detained for the duration of their removal proceedings[]" and are "ineligible for a bond hearing[.]" 29 I. & N. Dec. 216, 220, 225 (BIA 2025). Given that an appeal of the IJ ruling here would result in an identical outcome under this precedent, "any bond request pursuant to that statute would be futile." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1044 (E.D. Cal. 2025) (waiving administrative exhaustion where appeal would garner an identical result under BIA precedent); *J.A.C.P. v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n. 9 (E.D. Cal. Oct. 27, 2025) (" pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained"); *Cornejo v. Andrews*, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *4 (E.D. Cal. Jan. 29, 2026).

### B.    Detention Authority

Respondents' argument that Section 1225(b)(2) applies to *all* non-citizens present in the United States without admission has been widely rejected across this circuit, and indeed, throughout the United States. *See, e.g.*, *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *12 (N.D. Cal. Sept. 12, 2025); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *1, 8 (E.D. Cal. Oct. 9, 2025) (petitioner, who was

Case No.: 1:26-cv-03888-EJD

*United States District Court*
*Eastern District of California*

apprehended at the border and released on his own recognizance, was not an "arriving alien" or an "applicant seeking admission" under § 1225(b)(2)); *Otilio B.F. v. Andrews*, 809 F. Supp. 3d 1038, 1050 (E.D. Cal. 2025) (granting the immediate release upon payment of bond of a non-citizen who had been in the country for years and had a pending U-Visa application); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) ("If, as [r]espondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute."). "Such expansive interpretation of § 1225(b)(2) is unlawful as applied to non-citizens," like Petitioner, "who have been released by DHS on their own recognizance into the interior of the country." *Cornejo v. Andrews*, 2026 WL 237748, at *6.

As Respondents have not provided any lawful statutory basis for detention, the Court next turns to Petitioner's due process claim.

### C.     Due Process

Petitioner's constitutional challenge is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (*citing Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.     Liberty Interest

"A protected liberty interest may arise from a conditional release from physical restraint." *Omer G. G.*, 815 F. Supp. 3d at 1108 (citing *Young v. Harper*, 520 U.S. 143, 147–49 (1997)). Upon release, a parolee is allowed to live at liberty and establish ties in the community based "on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As such, "[e]ven when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Omer G.G.*, 815 F. Supp. 3d at 1108; *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal.

United States District Court
Eastern District of California

United States District Court
Eastern District of California

2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F.Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest).

Petitioner's release from detention on his own recognizance was similar. For nearly three years, it allowed him to establish ties in the community while pursuing relief in his removal proceedings by applying for asylum and temporary protected status. These actions were made possible by Petitioner's freedom, which is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). As such, Petitioner has a protected liberty interest in his release.[2]

### 2.      *Mathews* Factors

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2)

---

[2] Respondents have not argued that the expiration of Petitioner's parole justified his re-detention, so the Court need not consider that issue here. Regardless, the Court notes that courts throughout this circuit have found non-citizens still possess a liberty interest in their continued freedom following the expiration of their parole. *See, e.g.*, *Omer G.G.*, 815 F. Supp. 3d at 1108; *Faqeri v. Scott*, No. 2:26-CV-00003-JHC, 2026 WL 194475, at *3 (W.D. Wash. Jan. 26, 2026); *Sanchez Obregon v. Mullins*, No. 5:26-CV-02053-KJM, 2026 WL 1270753, at *3 (C.D. Cal. May 5, 2026); *D.L.C. v. Wofford*, No. 1:25-cv-1996 DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) ("[N]umerous courts in the Ninth Circuit have found that when a noncitizen is paroled under that section, his 'liberty interest [does] not expire along with his parole.'").

Case No.: 1:26-cv-03888-EJD

"the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for over two years. After his release, Petitioner was able to develop ties in the community as his removal proceedings progressed. "[His] detention denies [him] that freedom." *Omer G.G.*, 815 F. Supp. at 1111.

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Though Respondents argue that Petitioner's arrest for public intoxication justified the revocation of his release, "it does not eliminate Petitioner's due process right " to determination before a neutral decisionmaker that he is entitled to release on bond. *Alvarado v. Warden of California City Det. Ctr.*, No. 1:26-CV-02473-KES-FJS (HC), 2026 WL 1025612, at *1 (E.D. Cal. Apr. 15, 2026); *see also*, *Llanes Tellez v. Bondi*, No. 25-CV-08982-PCP, 2025 WL 3677937, at *8 (N.D. Cal. Dec. 18, 2025) (DUI arrest was insufficient justification for re-detention without providing any procedural safeguards required by due process); *Dicxon Jose P.C v. Warden, California City Det. Facility*, No. 1:26-CV-02658-TLN-CSK, 2026 WL 1045516, at *3 (E.D. Cal. Apr. 17, 2026) (similar).

Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Sharan S. v. Chestnut*, 2025 WL 3167826, at *8 (E.D. Cal. Nov. 12, 2025) ("Under section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination would have to be based on whether petitioner is 'a threat to national security, a

Case No.: 1:26-cv-03888-EJD

7

danger to the community at large, likely to abscond, or otherwise a poor bail risk.'") (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The record before the Court indicates that there was no independent finding of changed circumstances by a neutral arbiter before Petitioner was re-detained. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified based on changed circumstances, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d at 970; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. Indeed, Respondents have not pointed to any evidence suggesting that providing Petitioner with a constitutionally appropriate bond hearing would be burdensome.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to a bond hearing before a neutral decision-maker who will determine whether his continued detention is justified based on a finding that he is either a flight risk or danger to the community.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED.  IT IS HEREBY ORDERED that:

1.      Within 14 days of the date of service of this order, unless Petitioner consents to a later date, Respondent SHALL provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id.* at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider

Case No.: 1:26-cv-03888-EJD

United States District Court
Eastern District of California

Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017). If Respondents fail to provide a timely bond hearing in accordance with this order, Respondents are ordered to immediately release Petitioner.

2.      Prior to the bond hearing, the Petitioner SHALL receive meaningful notice of the scheduled hearing and SHALL be entitled to appear at the hearing.

3.      The Clerk of Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: June 11, 2026

EDWARD J. DAVILA
United States District Judge

United States District Court
Eastern District of California

Case No.: 1:26-cv-03888-EJD